UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES KEITH BEATTIE,      )
                            )
           Petitioner,     )     Case No. 1:06-cv-311
                            )
v.                          )     Honorable Robert Holmes Bell
                            )
CARMEN D. PALMER,         )
                            )
          Respondent.    )
_____)

## OPINION

       This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that Petitioner fails to state a claim.

**Discussion**

I.        Factual Allegations

Petitioner Charles K. Beattie presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Parnall Correctional Facility.  In 1996, Petitioner pleaded guilty to absconding on bond, MICH. COMP. LAWS § 750.199a, and obtaining money under false pretenses, MICH. COMP. LAWS § 750.218b, in Kent County Circuit Court.  On September 26, 1996, the Kent County Circuit Court sentenced Petitioner to prison terms of six months to four years for the absconding on bond conviction and one to ten years for the obtaining money under false pretenses conviction.  The MDOC released Petitioner on parole on May 10, 2003.

On May 10, 2005, Petitioner was arrested on first-degree home invasion charges in Kent County.  According to the MDOC Parole Violation Report dated May 12, 2005, the MDOC charged Petitioner with a parole violation arising from the same incident and Petitioner waived his right to a preliminary parole violation hearing.  In the Parole Violation Report, the MDOC noted that Petitioner denied participating in the actual home invasion and stealing property; but admitted he had pawned the stolen property after it was given to him.

In his *pro se* complaint, Petitioner sues Carmen D. Palmer, alleged to be a member of the Michigan Parole Board.[1]  Petitioner maintains that his constitutional rights were violated in three ways after his May 2005 arrest.  First, he maintains that his January 2006 parole revocation hearing violated his due process rights.  Second, he argues that his March 2006 denial of parole violated his liberty interests.

---

[1] Carmen D. Palmer is in fact the warden of the Riverside Correctional Facility.  That Palmer is not the actual defendant in interest is not integral to the disposition of Petitioner's application.

For relief, Petitioner requests that he be reinstated on parole.

II.      Failure to State a Claim

Neither of the two issues Petitioner raises in his application states a constitutional claim.

### A.      The January 2006 hearing did not violate Petitioner's due process rights.

Petitioner first argues that Defendant violated his due process rights because his "parole revocation hearing was violated." (*See* Pet., 13.) The gravamen of this claim appears to be that Petitioner's parole was revoked without due process. A degree of due process is required prior to the revocation of parole. *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972). The minimal due process requirements at a revocation hearing include:

> (a) written notice of the claimed violation of parole; (b) disclosure to the parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached hearing body' such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey,* 408 U.S. at 489. The second stage of parole revocation should not, however, be equated with a full criminal prosecution. *Id.* The due process requirements for a revocation hearing defined in *Morrissey* are codified in MICH. COMP. LAWS § 791.240a. Consistent with *Morrissey*, Michigan law additionally confers upon an accused parolee the right to present relevant evidence in mitigation of the charges against him, including testimony, documentary evidence, and the confrontation and cross-examination of adverse witnesses. MICH. COMP. LAWS § 791.240a(2)(b)-(d).

- 3 -

It is clear from documents Petitioner attaches to his application that he received due process under *Morrissey* at the January 11, 2006 hearing.  He received written notice of the claimed parole violation and disclosure of the evidence against him (*see* January 3, 2006 letter from Rachel Waterbury at MDOC to attorney Theodore Johnson and attachments, Pet. Exh. p 60); a neutral and detached hearing body (*see*  January 11, 2006 Parole Violation Arraignment Summary and Parole Board Action, Pet. Exh. p 80); and a written statement by the board regarding the evidence relied upon and the reasons for revoking parole (*Id.*).  Significantly, Petitioner had the benefit of counsel at the hearing.  (*See* January 4, 2006 letter from Theodore Johnson to Petitioner, Pet. Exh. p 61; Pet. Exh. pp 60, 80.)  Furthermore, on December 27, 2005, Petitioner had executed an agreement with the parole board in which he pleaded guilty to receiving and concealing stolen property and waived the appearance of his parole agent; in exchange the Office of Field Programs and hearing administrator recommended a 12-month continuance.  (*See* December 5, 2005 Office of Field Programs Plea Offer, Pet. Exh. p 90; Pet. Exh. pp 61, 80.)  In so doing, Petitioner waived his right to cross-examine his parole agent; his plea agreement also transformed his revocation hearing into a mitigation hearing.  (*See* Pet. Exh. p 61.)  However, at the hearing, Petitioner waived his right to present mitigating evidence, (*see* Pet. Exh. p 80), in effect waiving his right to present any evidence on his behalf.  Petitioner admitted that he had pawned property that had been stolen.  (*Id.*)  The parole board recommended precisely what Petitioner had plea-bargained for, that is, a 12-month continuance.  (*See* Pet. Exh. p 81.)  In light of these facts, Petitioner received due process at the January 2006 hearing and therefore fails to state a violation of his rights under the Due Process Clause.

**B.    The March 2006 denial of parole did not violate Petitioner's liberty interests.**

Petitioner next argues that the parole board violated his liberty interests, and relied on inaccurate information in denying him parole, on March 29, 2006.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so, and thus, the presence of a parole system by itself does not give rise to a constitutionally-protected liberty interest in parole release.  *Id.*; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole.  *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581, at *1 (6th Cir. Mar 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Mich. Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec.

- 5 -

17, 1999).  Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole.  *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990).  Finally, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).  Accordingly, Petitioner has no liberty interest at stake.  Because Petitioner has no liberty interest at stake, he fails to state a claim for a violation of his procedural due process rights.  *See Sweeton*, 27 F.3d at 1164-65.

Furthermore, the presence of specific parole guidelines does not lead to the conclusion that parole release is mandated upon reaching a "high probability of parole."  A state's scheme may be specific or general in defining the factors to be considered by the parole authority without necessarily mandating parole.  *Greenholtz*, 442 U.S. at 7-8.  At the time that *Sweeton* was decided, there were statutory factors to be considered by the parole board.  *See Sweeton*, 27 F.3d at 1164 n.1 (noting that MICH. COMP. LAWS § 791.235 listed " a large number of factors to be taken into account by the board.")  Although the current parole guidelines may be more detailed than the former statutory provision, they are still nothing more than factors that are considered by the board in assessing whether parole is appropriate.  The fact that the Michigan Parole Board must follow their own procedural statutes and regulations regarding parole does not raise an issue of federal due

- 6 -

process.  *Id.* at 1165.  This is particularly so in light of the fact that the guidelines do not state that the prisoner "must" or "shall" be paroled if the prisoner scores in a certain category; rather, the guidelines still speak in terms of probability, thus leaving the ultimate determination of parole release with the parole board.  In an unpublished decision, the Sixth Circuit has found that where the ultimate decision regarding parole rests with the parole board, a prisoner has no protectable interest in a system which determined a "grid score" for when he would be eligible for parole.  *Moran*, 1996 WL 304344, at *2; *accord Aqeel v. Dahlman*, No. 90-3459, 1991 WL 7102, at *1 (6th Cir. Jan. 25, 1991) (where statute and guidelines place parole decision in hands of the board, there is no liberty interest).  Because Petitioner has no liberty interest at stake, his due process claim must fail.

Petitioner's related allegation that his parole panel relied on false information to deny his parole also fails to state a claim.  Assuming that the parole board did rely on false information, Petitioner's claim does not present any constitutional violation.  *See Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996) (no constitutional violation by having false information placed in a prison file); *Carson v. Little*, No. 88-1505, 1989 WL 40171, at *1 (6th Cir. Apr. 18, 1989) (inaccurate information in an inmate's file does not amount to a constitutional violation).  Because Petitioner has no liberty interest in being paroled, Petitioner cannot show that the false information was relied upon to a constitutionally-significant degree.  *See Maiden v. Johnson*, No. 98-1479, 1999 WL 507207, at *1 (6th Cir. June 10, 1999); *Draughn v. Green*, No. 97-1263, 1999 WL 164915, at *2 (6th Cir. Mar. 12, 1999); *Perotti v. Marshall*, No. 85-3776, 1986 WL 16695, at * 1 (6th Cir. Mar. 14, 1986).  Therefore, Petitioner fails to state a claim for a violation of his liberty interests.

**Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because he fails to state a claim for habeas corpus relief.

**Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted.  *See Love v. Butler*, 952 F.2d 10,  (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of N. Y.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme

Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.  Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not find that this Court's dismissal of each of Petitioner's claims was debatable or wrong.  Petitioner was afforded due process at his January 2006 parole revocation hearing, and was not denied any constitutional rights when he was denied parole in March 2006.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.

Date:  _____May 24, 2006_____          /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          CHIEF UNITED STATES DISTRICT  JUDGE